I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ~~ALL COUNSEL~~ Plaintiff
~~(OR PARTIES)~~ AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _____3·8·13_____

DEPUTY CLERK



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR - 8 2013

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GUERRERO, | Case No. EDCV 13-0092-JGB (JPR) |
| Plaintiff, | |
| vs. | ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND |
| SERGEANT RIVERA et al., | |
| Defendants. | |

Plaintiff, a state prisoner incarcerated at the Robert
Presley Detention Center ("RPDC") in Riverside, filed pro se a
civil rights action on January 29, 2013, and was granted leave to
proceed in forma pauperis. Plaintiff raises claims against RPDC
employee Defendants "Sergeant Rivera," "Deputy Nelson," "Deputy
Contreras," "Deputy Bernal," "Corporal Sappington," and an
unspecified number of Doe Defendants sued collectively as the
"Emergency Response Team," all in their individual and official
capacities, for violations of his First, Fourth, Fifth, Eighth,
and 14th amendment rights as well as state statutory and tort
law. Plaintiff seeks compensatory and punitive damages,

1

1  injunctive relief, and attorneys' fees and costs.

2       After screening the Complaint in accordance with 28 U.S.C.

3  §§ 1915(e)(2) and 1915A prior to ordering service, the Court

4  finds that at least some of its claims fail to state claims upon

5  which relief might be granted.

6       Because it appears to the Court that at least some of the

7  deficiencies of the Complaint are capable of being cured by

8  amendment, the Complaint is dismissed with leave to amend.  See

9  Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc)

10  (holding that pro se litigant must be given leave to amend

11  complaint unless absolutely clear deficiencies cannot be cured by

12  amendment).  If Plaintiff desires to pursue this action, he is

13  ORDERED to file within 28 days of the service date of this Order

14  a First Amended Complaint ("FAC") remedying the deficiencies

15  discussed below.

16                        **STANDARD OF REVIEW**

17       The Court's screening of a complaint under 28 U.S.C.

18  §§ 1915(e)(2) and 1915A is governed by the following standards.

19  A complaint may be dismissed as a matter of law for failure to

20  state a claim "where there is no cognizable legal theory or an

21  absence of sufficient facts alleged to support a cognizable legal

22  theory."  Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d

23  1035, 1041 (9th Cir. 2010); O'Neal v. Price, 531 F.3d 1146, 1151

24  (9th Cir. 2008).  In considering whether a complaint states a

25  claim, a court must accept as true all the factual allegations in

26  it.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949,

27  173 L. Ed. 2d 868 (2009); Hamilton v. Brown, 630 F.3d 889, 892-93

28  (9th Cir. 2011).  The court need not accept as true, however,

"allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008); see also Shelton v. Chorley, 487 F. App'x 388, 389 (9th Cir. 2012). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotation marks and citations omitted).

## DISCUSSION

### I.  Eighth Amendment claims

Plaintiff alleges that his Eighth Amendment rights were violated when, on October 26, 2012, an unknown Doe Defendant, a member of the "Emergency Response Team," placed him in tight handcuffs that cut off his circulation, caused his arms to go numb, and caused him "agonizing pain" and then denied him pain medication for his damaged wrist. (Compl. at 8-9, 12-15.) He states that he was left handcuffed "for a period of a minimum of 5 [hours] up to 7 [hours]." (Compl. at 8.) He further alleges that he told Defendants Nelson, Contreras, Sappington, and Bernal

3

1    when they walked by that he was in "agonizing pain" and needed

2    medication and they ignored his requests.   (Compl. at 8-9, 12-

3    15.)

4        The use of excessive force by a prison official violates the

5    Eighth Amendment.[1]   See Hudson v. McMillian, 503 U.S. 1, 6-7, 112

6    S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992).   To succeed on a claim

7    of excessive force, a plaintiff must show that officials applied

8    force "'maliciously and sadistically for the very purpose of

9    causing harm.'"   Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct.

10   1970, 1978, 128 L. Ed. 2d 811 (1994) (quoting Hudson, 503 U.S. at

11   6).   An officer's refusal to remove tight handcuffs from a

12   prisoner's wrists may constitute excessive force when the

13   prisoner's repeated pleas to loosen the cuffs were ignored and

14   the cuffs caused severe pain or lasting injury to the prisoner.

15   See Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004);

16   Alexander v. Cnty. of L.A., 64 F.3d 1315, 1322-24 (9th Cir.

17   1995).   An inmate need not show serious injury in order to

18   establish an Eighth Amendment violation.   See Hudson, 503 U.S. at

19   7.

20       Plaintiff has not sufficiently stated an excessive-force

21   claim against Defendants Nelson, Contreras, Sappington, or

22

23   _____

     [1]It is unclear from the face of the Complaint whether
24   Plaintiff is a prisoner or a pretrial detainee.   To the extent he
     is a pretrial detainee, the 14th Amendment, rather than the Eighth
25   Amendment, governs his excessive-force claims.   See Gibson v. Cnty.
     of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).   The same legal
26   standards apply, however.   See Simmons v. Navajo Cnty., 609 F.3d
     1011, 1017 (9th Cir. 2010) (noting that deliberate-indifference
27   claim by pretrial detainee governed by due process clause of 14th
     Amendment, but "same standards" as in Eighth Amendment cases
28   apply).

1 | Bernal.  His allegations show that he was handcuffed for between
2 | five and seven hours, during that period each Defendant "passed
3 | by" once, and as they did so he asked them to loosen the cuffs
4 | because they were too tight, but each refused and "walked away."
5 | (See Compl. at 8-9, 12-15.)  He does not allege that any of those
6 | Defendants had anything to do with his handcuffing, that he made
7 | more than one request to any Defendant to loosen the cuffs, or
8 | that any Defendant was present for more than a few moments while
9 | Plaintiff was in handcuffs and thus able to observe the effect
10 | the handcuffs had on him.  To the extent he seeks to assert an
11 | excessive-force claim against the unnamed Doe Defendant who
12 | actually placed him in the handcuffs, his allegations are also
13 | insufficient because he does not allege that he ever told the
14 | officer who handcuffed him that the handcuffs were too tight or
15 | that that officer otherwise knew the handcuffs were too tight.
16 | His allegations are therefore insufficient to state an excessive-
17 | force claim against any Defendant.  See Reed v. Mortimer, 2012 WL
18 | 2502730, at *1 (S.D. Cal. June 28, 2012) (dismissing Eighth
19 | Amendment tight-handcuffing claim against prison guards because
20 | "[t]here are no facts from which the Court could even infer that
21 | [defendant who placed plaintiff in handcuffs] subjected Plaintiff
22 | to tight handcuffs maliciously or sadistically to cause harm"
23 | and, with respect to officers who allegedly "ignored
24 | [Plaintiff's] request to have the handcuffs loosened," "[f]rom
25 | the facts alleged in the Complaint, the Court cannot infer that
26 | Defendants knew of and ignored an 'excessive risk to inmate
27 | health and safety'" (citing Farmer, 511 U.S. at 837)); see also
28 | Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001)

(affirming summary judgment in favor of defendant officer because plaintiff failed to present evidence sufficient to show that officer "acted with malice" in placing her in tight handcuffs); cf. Alexander, 64 F.3d at 1322-23 (plaintiff stated claim for excessive force when officers disregarded repeated requests to loosen handcuffs); Gregory v. Adams, No. CIV S-05-1393 FCD EFB P, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19) (holding that triable issue existed as to whether officer who did not personally handcuff plaintiff nonetheless used excessive force in ignoring plaintiff's repeated complaints of pain and refusing to loosen cuffs for over five hours), accepted by 2008 WL 780672 (E.D. Cal. Mar. 21, 2008).

To the extent Plaintiff asserts that Defendants were negligent in refusing to help him (see Compl. at 17 (alleging that Defendants Nelson, Contreras, Sappington, and Bernal were negligent in failing to prevent use of excessive force)), allegations of negligence cannot support an excessive-force claim.   See Farmer, 511 U.S. at 835; Flores v. Evans, No. C 08-3297 RMW (PR), 2008 WL 4614515, at *2 (N.D. Cal. Oct. 16, 2008) (dismissing excessive-force claim premised on allegations of negligence because "neither negligence nor gross negligence is actionable under § 1983 in the prison context").

Plaintiff also alleges that Defendant Bernal threatened him and screamed obscenities at him while he was handcuffed, and as a result he suffered psychological injury, emotional injury, and "distress." (Compl. at 12-14; see also Compl. at 9.)  To the extent Plaintiff seeks to assert a separate Eighth Amendment claim based on alleged threats, verbal harassment, or emotional

1  abuse, he may not do so.  Allegations of verbal harassment and

2  abuse fail to state a claim cognizable under § 1983.  Freeman v.

3  Arpaio, 125 F.3d 732, 738 (9th Cir. 1997), abrogated on other

4  grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir.

5  2008); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.

6  1996) ("disrespectful and assaultive comments" by prison guard do

7  not implicate Eighth Amendment); Oltarzewski v. Ruggiero, 830

8  F.2d 136, 139 (9th Cir. 1987) (prison guard's use of "vulgar

9  language" toward prisoner does not violate constitution).

10  Allegations of mere threats also are not cognizable under § 1983.

11  See Corales v. Bennett, 567 F.3d 554, 564-65 (9th Cir. 2009)

12  (allegations that prison guards threatened prisoner insufficient

13  to state constitutional claim); Gaut v. Sunn, 810 F.2d 923, 925

14  (9th Cir. 1987) (same).  Thus, to the extent Plaintiff asserts an

15  Eighth Amendment claim based on his allegations of verbal abuse

16  and threats by any Defendant, that claim is not cognizable.

17      The Complaint also contains allegations that Defendants used

18  excessive force against other inmates in various ways.  (See

19  Compl. at 5-7.)  To the extent Plaintiff seeks to allege any

20  claims on behalf of other inmates, he cannot do so.  See Simon v.

21  Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008) ("[T]he

22  privilege to represent oneself pro se provided by [28 U.S.C.]

23  § 1654 is personal to the litigant and does not extend to other

24  parties or entities."); Pinson v. Prieto, No. ED CV 10-811-PSG

25  (SP), 2012 WL 7006131, at *7 (C.D. Cal. July 2, 2012) ("This is

26  not a class action, and plaintiff has no right to assert claims

27  on behalf of other inmates." (citing Oxendine v. Williams, 509

28  F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit

[an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.")))‚ accepted by 2013 WL 427108 (C.D. Cal. Feb. 1, 2013). Thus, any claims Plaintiff asserts on behalf of other inmates must be dismissed.

For all the foregoing reasons, Plaintiff's Eighth Amendment claims are dismissed.

## II. Claims regarding the alleged improper search and destruction of Plaintiff's legal papers

Plaintiff alleges that on October 26, 2012, prison guards searched several inmates' cells; during the search, another inmate apparently flooded his cell with water, which seeped into Plaintiff's cell. (Compl. at 3, 6-7.) Plaintiff was handcuffed and removed from his cell by the "Emergency Response Team," and while he was out of his cell Sergeant Rivera, Deputy Nelson, Deputy Contreras, and unspecified members of the "Emergency Response Team" searched his "legal documents" "without warrant or consent." (Id. at 11, 16.) The legal documents included "police reports, motions, caselaw [research], witness testimony and/or statements." (Id. at 16.) When he returned to his cell the next morning, Plaintiff "noticed [his] legal documents all over [his] bed and floor," saw that "the floor was wet[,] . . . noticed some of his legal papers soaked on the floor and torn and tattered as if they had been possibly walked over and [damaged]," and "noticed there [were] missing pages to [his] police reports and even some pictures from [his] evidence now missing." (Id. at 10.)

For the reasons outlined below, these allegations fail to state a constitutional claim. Moreover, to the extent Plaintiff

1  is a pretrial detainee and is representing himself pro per in the
2  underlying criminal action, he may raise those allegations before
3  the trial court, and any related civil rights claims would have
4  to be stayed in this Court.  <u>Cf.</u> <u>Rivas v. Cal. Franchise Tax Bd.</u>,
5  619 F. Supp. 2d 994, 1000 n.2, 1006 (E.D. Cal. 2008) (noting that
6  civil rights claims of denial of access to counsel "might impugn
7  the integrity of the criminal investigation" and staying such
8  claims under <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129
9  L. Ed. 2d 383 (1994), and <u>Wallace v. Kato</u>, 549 U.S. 384, 393-94,
10  127 S. Ct. 1091, 1097-98, 166 L. Ed. 2d 973 (2007)).

11          A.    <u>Fourth Amendment Claim - Unlawful Search and Seizure</u>
12          Plaintiff alleges that Defendants' unauthorized search of
13  his legal documents and alleged destruction of some of those
14  documents violated his Fourth Amendment rights.  (Compl. at 10-
15  11.)   The Fourth Amendment "protects two types of expectations,
16  one involving 'searches,' the other 'seizures.'"  <u>United States</u>
17  <u>v. Jacobsen</u>, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed.
18  2d 85 (1984).  The Supreme Court has held, however, that "the
19  Fourth Amendment has no applicability to a prison cell."  <u>Hudson</u>
20  <u>v. Palmer</u>, 468 U.S. 517, 536, 104 S. Ct. 3194, 3205, 82 L. Ed. 2d
21  393 (1984); <u>Bell v. Wolfish</u>, 441 U.S. 520, 557, 99 S. Ct. 1861,
22  1883, 60 L. Ed. 2d 447 (1979) (holding that pretrial detainees
23  have no Fourth Amendment right to be present when cell and
24  belongings in it are searched).  "The applicability of the Fourth
25  Amendment turns on whether the person invoking its protection can
26  claim a justifiable, a reasonable, or a legitimate expectation of
27  privacy that has been invaded by government action."  <u>Hudson</u>, 468
28  U.S. at 525 (internal quotation marks and citation omitted).  In

prison cases, however, "the prisoner's expectation of privacy [must] always yield to what must be considered the paramount interest in institutional security." Id. at 527; see also Bell, 441 U.S. at 557 ("[G]iven the realities of institutional confinement, any reasonable expectation of privacy that a [pretrial] detainee retained necessarily would be of a diminished scope.").

Because Plaintiff, as a prisoner, could not have had a reasonable expectation of privacy in his cell, the Fourth Amendment did not apply to Defendants' search of his cell, even if Defendants intentionally destroyed his property. See Hudson, 468 U.S. at 536 (holding that prisoner's constitutional rights not violated "even if [guard] intentionally destroyed [prisoner's] personal property" because adequate remedy existed for deprivation of property under state tort law); Bell, 441 U.S. at 557 (holding that unannounced searches of pretrial detainee's rooms outside their presence does not violate Fourth Amendment). Plaintiff has not stated and cannot state a claim for unreasonable search and seizure of property from his cell under the Fourth Amendment.  His Fourth Amendment claim must therefore be dismissed.

The fact that the search was of Plaintiff's legal papers and it occurred outside his presence is of no moment, even if the search violated prison regulations.  Prison regulations create an independent liberty interest protected by the due process clause only when they promote "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v.

Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 230 132 L. Ed. 2d 418 (1995).   In Mitchell v. Dupnik, 75 F.3d 517, 523 (9th Cir. 1996), the Ninth Circuit held that a pretrial detainee did not have a constitutional right to be present when his legal papers were searched, relying on Bell, 441 U.S. at 555-57.   The search of a plaintiff's legal papers in his absence was not "a dramatic departure from the basic conditions of his incarceration, even in his status as a pretrial detainee."   Id.   Although the search violated the prison's regulations, the court held that "the violation of this regulation does not 'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'"   Id. (quoting Sandin, 515 U.S. at 486)).[2]   Thus, to the extent Plaintiff's constitutional claim is premised on the fact that his legal papers were searched outside his presence in violation of prison regulations, that claim is foreclosed by Mitchell.   See also Giba v. Cook, 232 F. Supp. 2d 1171, 1189 (D. Or. 2002) (holding that search of pretrial detainee's legal papers did not violate First Amendment because plaintiff "does not allege how he was injured by [defendant's] scanning of [legal] documents"; even if search did violate First Amendment, defendants were entitled to qualified immunity because no clearly established law in Ninth Circuit "requires the inmate's presence during an inspection of the legal documents in his cell" (internal quotation marks and

_____

[2] In Carlo v. City of Chino, 105 F.3d 493, 499 & n.1 (9th Cir. 1997), the Ninth Circuit noted that Sandin did not necessarily govern the assessment of all state-created liberty interests for pretrial detainees but affirmed the holding of Mitchell that Sandin did govern with respect to cell searches.

1  citation omitted)).

2      B.   Deprivation of Property

3      Plaintiff also alleges a due process violation based on the

4  search of his cell. (See Compl. at 11, 15.)  To the extent his

5  due process claim is based on the allegedly improper search of

6  his legal materials outside of his presence, it is foreclosed by

7  Mitchell, as discussed above.  To the extent it is premised on

8  the alleged destruction of his legal papers, it also fails.

9      The Due Process Clause protects prisoners from being

10 deprived of property without due process of law.  Wolff v.

11 McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d

12 935 (1974).  Prisoners have a protected interest in their

13 personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir.

14 1974).  But while an authorized and intentional deprivation of

15 property is actionable under the Due Process Clause, see Hudson,

16 468 U.S. at 532 & n.13 (citing Logan v. Zimmerman Brush Co., 455

17 U.S. 422, 435-36, 102 S. Ct. 1148, 1158, 71 L. Ed. 2d 265

18 (1982)), neither negligent nor unauthorized intentional

19 deprivations of property by a governmental employee "constitute a

20 violation of the procedural requirements of the Due Process

21 Clause of the Fourteenth Amendment if a meaningful

22 postdeprivation remedy for the loss is available," Hudson, 468

23 U.S. at 533;[3] Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir.

24 _____

25     [3]An authorized deprivation is one carried out pursuant to
   established state procedures, regulations, or statutes.  Piatt v.
26 McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v.
   City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).  Plaintiff
27 has not alleged, and the facts do not demonstrate, an authorized
   deprivation.  As discussed infra, Plaintiff's vague and conclusory
28 allegations that Defendants acted pursuant to an unspecified

1994) (per curiam) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); see also Henderson v. San Joaquin Cnty. Sheriff's Dep't, No. CIV S-07-0174 FCD EFB P, 2007 WL 2947500, at *2 (E.D. Cal. Oct. 9, 2007) (applying same standard to deprivation-of-property claim by pretrial detainee and dismissing complaint with leave to amend); Haraszewski v. Brannan, No. 10cv0546 LAB (PCL), 2011 WL 4570557, at *5 (S.D. Cal. Aug. 11) (holding that pretrial detainee "may use state tort and common-law remedies to redress" destruction of personal property in prison cell by prison officials and granting motion to dismiss due process claim), accepted by 2011 WL 4569075 (S.D. Cal. Sept. 30), reconsideration denied by 2011 WL 5295215 (S.D. Cal. Nov. 2, 2011).

California law provides an adequate postdeprivation remedy for any property deprivations. See Cal. Gov't Code §§ 810 et seq.; Barnett, 31 F.3d at 816-17. Thus, Plaintiff's due process claim, to the extent it is based on a negligent or unauthorized intentional deprivation of property by Defendants, must be dismissed. See also Jacobs v. Dir. of Cal. Dep't of Corrs., 470 F. App'x 693, 694 (9th Cir. 2012) ("The district court properly dismissed [plaintiff's § 1983] action [alleging that deprivation of property violated due process] because [plaintiff] had an adequate post-deprivation remedy under California law.").

C.   Denial of Access to Courts

Liberally construed, Plaintiff's allegations that his legal

_____

unlawful "policy" are insufficient to state a constitutional claim.

13

1  papers were unlawfully damaged or destroyed could also suggest a

2  claim for denial of access to the courts.

3      Inmates have a fundamental constitutional right of access to

4  the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S. Ct. 2174,

5  2177, 135 L. Ed. 2d 606 (1996) (citing Bounds v. Smith, 430 U.S.

6  817, 821, 97 S. Ct. 1491, 1494, 52 L. Ed. 2d 72 (1977)); Silva v.

7  Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011). The right is

8  limited to the filing of direct criminal appeals, habeas

9  petitions, and civil rights actions. Lewis, 518 U.S. at 354.

10  Claims for denial of access to the courts may arise from the

11  frustration or hindrance of "a litigating opportunity yet to be

12  gained" (forward-looking access claims) or the loss of a

13  meritorious suit that "cannot now be tried" (backward-looking

14  access claims). Christopher v. Harbury, 536 U.S. 403, 413–14,

15  122 S. Ct. 2179, 2186, 153 L. Ed. 2d 413 (2002). A plaintiff

16  alleging denial of access to the courts must allege an actual

17  injury by being shut out of court. Lewis, 518 U.S. at 351.

18  "Actual injury" is defined as "actual prejudice with respect to

19  contemplated or existing litigation, such as the inability to

20  meet a filing deadline or to present a claim." Id. at 348

21  (internal quotation marks omitted).  "[M]eaningful access to the

22  courts is the touchstone," and to state a claim the plaintiff

23  must therefore "demonstrate that the alleged [violation] . . .

24  hindered his efforts to pursue a legal claim." Id. at 351

25  (internal quotation marks and citation omitted).

26      Here, Plaintiff has not alleged that his right of access to

27  the courts was impaired in any way.  Plaintiff alleges that his

28  "legal documents" were damaged or destroyed, but he does not

14

allege how that alleged destruction affected any pending or future legal actions in which he is or may be involved.  Thus, to the extent Plaintiff seeks to bring a claim for denial of access to the courts, that claim must be dismissed.

### D.   Retaliation

Plaintiff claims that Defendants retaliated against him, apparently for complaining about being handcuffed.  (Compl. at 9, 11.)  Although he does not allege a separate claim for retaliation under the First Amendment, liberally construed, his Complaint may raise such a claim.

The Ninth Circuit has spelled out five elements required to state a viable claim of First Amendment retaliation within the prison context: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

Plaintiff has not properly stated a retaliation claim because he has not alleged that his exercise of his First Amendment rights was "chilled" as a result of Defendants' actions.  Plaintiff asserts that some of his "legal papers" were ruined, but he has not alleged what the consequences of that were.[4]  Moreover, it is not at all clear from the allegations in

---

[4]To the extent Plaintiff alleges that he was denied commissary privileges in retaliation for exercising his First Amendment rights (see Compl. at 11), those allegations do not raise a constitutional

1 | the Complaint that Defendants intentionally destroyed Plaintiff's
2 | legal papers; Plaintiff alleges that his papers were "wet" and
3 | "possibly walked over and [damaged]" (Compl. at 10), which
4 | suggests at most that the papers were damaged as a result of the
5 | cell flood and Defendants were not careful in walking over the
6 | damaged papers when they searched his cell. (See also Compl. at
7 | 16 (alleging that Defendant Nelson told Plaintiff, "shit's
8 | everywhere, I just turned your box over and went through it
9 | really quick, shit happens").) Plaintiff has not alleged that
10 | his protected conduct was a "'substantial' or 'motivating' factor
11 | behind the defendant's conduct," as required by the second
12 | element of a prisoner retaliation claim. Brodheim v. Cry, 584
13 | F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v.
14 | Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Thus, to the
15 | extent Plaintiff seeks to assert a retaliation claim, that claim
16 | must be dismissed.

17 | **III. Claims regarding denial of access to prison commissary**

18 | Plaintiff alleges that his Eighth Amendment rights were
19 | violated when he lost his commissary privileges and was deprived
20 | of "hyg[i]ene items" and his Sixth Amendment rights were violated
21 | when he was not allowed to purchase "stationary [sic] material"
22 | for his "legal work" and phone cards to contact his
23 | "investigator" and "witnesses." (Compl. at 10-11.)

24 | To the extent Plaintiff alleges that Defendants
25 | unconstitutionally denied him access to the courts by revoking
26 | his commissary privileges, that claim fails for the reasons

27 |

28 | claim for the reasons discussed infra in Section III.

16

discussed in section II.C.  To the extent Plaintiff seeks to
assert an independent constitutional claim based on denial of
access to the prison commissary, he cannot do so.  Prisoners do
not have a constitutional right to use the prison commissary.
See Keenan, 83 F.3d at 1092 (affirming dismissal of § 1983 claim
for denial of prison canteen products because "[t]here is no
constitutional right to such items").  Thus, to the extent
Plaintiff alleges his constitutional rights were violated by
Defendants' refusal to allow him to use the commissary or to
purchase particular items from the commissary, Plaintiff's claims
must be dismissed.

## IV.  Official-capacity claims

Plaintiff has sued all Defendants in their official
capacities as well their individual capacities.  (Compl. at 3-
5.)  Plaintiff alleges that Defendants Rivera and Sappington
implemented an "illegal policy" leading to the deprivation of his
constitutional rights and failed to supervise subordinate
employees.  (Compl. at 3-4, 17-18.)

The Supreme Court has held that an "official-capacity suit
is, in all respects other than name, to be treated as a suit
against the entity."  Kentucky v. Graham, 473 U.S. 159, 166, 105
S. Ct. 3099, 3015, 87 L. Ed. 2d 114 (1985); see also Brandon v.
Holt, 469 U.S. 464, 471-72, 105 S. Ct. 873, 878, 83 L. Ed. 2d 878
(1985).  Such a suit "is not a suit against the official
personally, for the real party in interest is the entity."
Graham, 473 U.S. at 166 (emphasis in original).  Thus,
Plaintiff's claims against Defendants in their official
capacities are properly treated as claims against the Riverside

17

County Sheriff's Department, the relevant local government
entity.

When an individual sues a local government entity for
violation of his constitutional rights, the entity is liable if
the individual can establish that the local government "had a
deliberate policy, custom, or practice that was the 'moving
force' behind the constitutional violation he suffered." <u>Galen
v. Cnty. of L.A.</u>, 477 F.3d 652, 667 (9th Cir. 2007) (quoting
<u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694-95, 98 S. Ct.
2018, 2037-38, 56 L. Ed. 2d 611 (1978)); <u>Villegas v. Gilroy
Garlic Festival Ass'n</u>, 541 F.3d 950, 957 (9th Cir. 2008) (en
banc).  Plaintiff may not sue any government entity on a theory
of <u>respondeat superior</u>, which is not a theory of liability
cognizable under 42 U.S.C. § 1983.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 677;
<u>Polk Cnty. v. Dodson</u>, 454 U.S. 312, 325, 102 S. Ct. 445, 453, 70
L. Ed. 2d 509 (1981).  Nonetheless, because a supervisory
official may be liable on the basis of his own acts or omissions,
a plaintiff may sufficiently state a claim against a supervisor
for deliberate indifference based upon the supervisor's knowledge
of and acquiescence in the unconstitutional conduct by his
subordinates.  <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir.
2011).  Thus, the supervisor is liable either if he was
personally involved in the unconstitutional deprivation by acting
in a manner that was deliberately indifferent or there was a
sufficient causal connection between his wrongful conduct and the
deprivation.  <u>Id.</u> at 1206-07.

Isolated incidents of abuse do not suffice to state a claim
for an unconstitutional policy.  "A plaintiff cannot prove the

existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1233 (9th Cir. 1989); <u>see also</u> <u>Thompson v. City of L.A.</u>, 885 F.2d 1439, 1444 (9th Cir. 1989) (noting that "proof of random acts or isolated events are insufficient to establish a custom" within meaning of <u>Monell</u>), <u>overruled on other grounds by</u> <u>Bull v. City & Cnty. of S.F.</u>, 595 F.3d 964, 981 (9th Cir. 2010). Plaintiff vaguely alleges that an "illegal policy" existed that led to the deprivation of his constitutional rights, but he alleges no facts in support of that vague and conclusory claim. Insofar as Plaintiff seeks to sue a government entity, he must identify some particular policy, custom, or practice of the entity that violated his constitutional rights. <u>Monell</u>, 436 U.S. at 690-91; <u>Christie v. Iopa</u>, 176 F.3d 1231, 1235 (9th Cir. 1999). Vague and conclusory allegations will not suffice. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

Because Plaintiff has failed to specifically identify any official policy or longstanding custom or practice violative of his constitutional rights, he has not stated a constitutional claim against any of the Defendants in their official capacity. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989) (to state a claim against defendant in official capacity, plaintiff must show that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). His official-capacity

1  claims against all Defendants must therefore be dismissed.[5]

2  **V.    State-law claims**

3      In addition to his federal constitutional claims, Plaintiff

4  asserts state tort-law claims for assault and gross negligence.

5  (Compl. at 14-15, 17-18.)

6      Generally, a violation of state law is not sufficient to

7  state a claim for relief under § 1983. See Paul v. Davis, 424

8  U.S. 693, 700-01, 96 S. Ct. 1155, 1160-61, 47 L. Ed. 2d 405

9  (1976). A court may exercise supplemental jurisdiction over a

10  state-law claim if a plaintiff raises a cognizable federal claim

11  that is substantial enough to confer federal jurisdiction and

12  shares a common nucleus of operative fact with the state claim.

13  Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995); see 28 U.S.C.

14  § 1367. If the federal claim is dismissed before trial, the

15  state claim should be dismissed as well. United Mine Workers of

16  Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed.

17  2d 218 (1966).

18      Here, Plaintiff's state-law tort claims appear to derive

19  from the same nucleus of operative facts as his federal claims.

20  The Court therefore would have jurisdiction to adjudicate

21  Plaintiff's tort claims. Because the Court dismisses Plaintiff's

22  federal claims for failure to state a claim, however, his state-

23  law tort claims must be dismissed as well.

24  _____

25      [5]Without any explanation, Plaintiff alleges that "only the
    Southern Hispanics were being pulled out of [their] cells."
26  (Compl. at 6.) To the extent Plaintiff seeks to allege that the
    Riverside County Sheriff's Department promulgated an unlawful
27  policy of racial discrimination, or to the extent he seeks to
    assert an equal protection claim, this vague and conclusory
28  allegation is insufficient. See Iqbal, 556 U.S. at 677.

1   Plaintiff's state-law tort claims must also be dismissed
2   because he has failed to plead compliance with the California
3   Tort Claims Act.  California's Tort Claims Act requires that any
4   state-law tort claim against a public entity or its employees be
5   presented to the California Victim Compensation and Government
6   Claims Board ("Tort Claims Board") no more than six months after
7   the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910,
8   911.2, 950-950.2.  Compliance with this claim-presentation
9   requirement is mandatory for prison inmates bringing lawsuits
10  alleging state-law tort claims against public employees.  Id.
11  §§ 950.2, 945.6(c).  No suit may be brought until a written claim
12  has been presented to, and rejected by, the Tort Claims Board.
13  Id. § 950.6; California v. Super. Ct. (Bodde), 32 Cal. 4th 1234,
14  1245, 13 Cal. Rptr. 3d 534, 543 (2004); Mangold v. Cal. Pub.
15  Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  In bringing a
16  state-law tort claim against a public employee, a plaintiff must
17  plead compliance with the Tort Claims Act or the claim is subject
18  to dismissal.  Bodde, 32 Cal. 4th at 1245; Mangold, 67 F.3d at
19  1477; Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 627 (9th
20  Cir. 1988) ("Karim-Panahi's pendent state law tort claims against
21  both the individual and public entity defendants are barred
22  unless he presented them to the City and the LAPD before
23  commencing suit.").  Here, Plaintiff did not plead compliance
24  with the Tort Claims Act in the Complaint and thus his state tort
25  claims must be dismissed.

26  Plaintiff also asserts claims for violation of California
27  Penal Code sections 987.9 and 240.  (Compl. at 6, 14.)  Plaintiff
28  cannot sue Defendants in a civil suit for violations of those

1  sections of the Penal Code because neither section 987.9 nor
2  section 240 creates a private right of action.  See <u>Gonzaga Univ.</u>
3  <u>v. Doe</u>, 536 U.S. 273, 283-86, 122 S. Ct. 2268, 2275-77, 153 L.
4  Ed. 2d 309 (2002) (explaining that to support private right of
5  action, statute must contain explicit rights-creating terms and
6  manifest intent to create private remedy); <u>Allen v. Gold Country</u>
7  <u>Casino</u>, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of
8  action for violation of criminal statutes); <u>Rezek v. City of</u>
9  <u>Tustin</u>, No. SACV 11-01601 DOC (RNBx), 2012 WL 5829928, at *7-8
10  (C.D. Cal. Nov. 1, 2012) (dismissing § 1983 claims alleging
11  violations of California Penal Code because cited Penal Code
12  statutes "do not include language suggesting that civil
13  enforcement is available to Plaintiff").  Thus, those claims must
14  be dismissed.

**********************

15

16      If Plaintiff desires to pursue any of the claims in the
17  Complaint, he is ORDERED to file a First Amended Complaint within
18  28 days of the service date of this Order, remedying the
19  deficiencies discussed above.  The FAC should bear the docket
20  number assigned to this case, be labeled "First Amended
21  Complaint," and be complete in and of itself without reference to
22  the original Complaint or any other pleading, attachment, or
23  document.  **Plaintiff is admonished that if he fails to timely**
24  **file a FAC, the Court will recommend that this action be**
25  **dismissed with prejudice on the grounds set forth above and/or**
26  **for failure to diligently prosecute.**
27  DATED: March 8, 2013

                    _____
                    JEAN ROSENBLUTH
28                  U.S. MAGISTRATE JUDGE

22